## CREEL v. DORSEY.

No. 1449.

Court of Appeal of Louisiana.
First Circuit.
March 4, 1935.

 

M. I. Varnado, of Bogalusa, for appellant.
Rich & Jones, of Bogalusa, for appellee.

LE BLANC, Judge.

This is a suit brought by Mrs. Recie Stubb Creel, wife of Henry Creel, lessee of a house on Ott street in the subdivision of the city of Bogalusa known as Richardsontown, against W. Gibbs Dorsey, alleged owner of the house, and landlord, for damages said to have been sustained by her when she fell on the back porch, on August 19, 1933. She alleges that there was a broken or defective doorsill in the 'door leading from the combination kitchen and dining room, through which she had to pass to go to the back porch, and that on the day mentioned, while she was passing over that sill on her way to the water hydrant to get a bucket of water, the heel of her shoe got caught in the broken or defective part of the doorsill, causing her to reel over and fall her full length on the porch from which she then rolled off into the yard. She alleges that as a result of the fall she suffered a miscarriage. Without itemizing the amount, she claims damages in the sum of $5,000.

The defendant Dorsey disclaimed ownership of the leased premises, alleging that the property was that of his wife for whom he acted as agent in the leasing of it. In a supplemental petition the plaintiff alleged that the property belonged to the community between Dorsey and his wife and that the revenues derived from the lease fell into the community of which he had the administration, and, consequently, as head thereof, he was liable in damages to her. In the alternative she asked for judgment against both Dorsey and his wife in solido. The issue raised by this defense is one which need not bother us, however, as during the trial of the case, as appears from the record, the defendant Dorsey assumed all liability in case the court decreed that plaintiff was entitled to any damages.

Another defense raised by Dorsey's answer is to the effect that plaintiff and her husband had assumed responsibility for the condition of the leased premises, if it were in bad condition, by agreeing to make the necessary repairs themselves upon his furnishing the required material. The lower court did not pass on this defense, although there is considerable testimony offered by the defendant to support such an agreement.

The last defense is that the house was not in the bad condition alleged by the plaintiff; that she did not fall because of any defects in the doorsill; and that she did not sustain the damages claimed, nor did she suffer a miscarriage from the fall she says she had. This last defense was sustained by the lower court which rejected her demand and dismissed her suit, and the present appeal is from the judgment which so decreed.

Inasmuch as we have decided to affirm the judgment of the lower court as rendered on the merits, it will be unnecessary for us to pass on the special defense of the assumption of responsibility for the condition of the leased premises by the plaintiff under the alleged agreement as set out by defendant Dorsey.

The district judge was not much impressed with the testimony of the plaintiff and that of her witnesses. Besides her own testimony that she fell in the manner alleged by her, there is that of her husband and her stepdaughter, Juanita Creel, and two other witnesses, to the same effect. These last two witnesses were on the road, about seventy-five yards away, when, they say, they saw her fall from the porch. One of them, Curtis Duncan, was shown to be wholly unworthy of belief. The other, Johnny Wells, is the only apparently disinterested and reliable witness who says he saw her fall, although he does not profess to know what caused her to fall. Four ladies, neighbors of the plaintiff, some of whom visited her quite frequently, testified that they saw her on several occasions after the alleged accident and that she never mentioned anything to them about it or complained of having suffered a miscarriage. These ladies, Mrs. Wascom, Mrs. Farrell, Mrs. Knight, and Mrs. Ritchie, are very favorably referred to in the written opinion of the district judge who states that he knows most of them personally, and, as he very appropriately adds: "It would seem very strange indeed for plaintiff to have sustained the serious accident she claims to have sustained and not mention it to her closest neighbors with whom she was almost daily

in close contact for this length of time." We agree with him in this as we believe that there is a human instinct, a natural impulse, especially in women, to discuss matters of this kind among themselves and more so among neighbors. There is the natural feeling of sympathy between them which prompts them to disclose their troubles and sufferings to one another. That is what we believe this plaintiff would have done had she been so severely injured and with such an unfortunate result, and the fact that she did not, does, in our opinion, affect the weight of her testimony and that of her witnesses.

As we have already stated, plaintiff claims that she fell on August 19, and that the fall caused her to have a "serious miscarriage." She also speaks of having sustained severe bruises on her hip and the small of her back and of skinning her arm and leg. And yet, it was not until September 5, more than two weeks after, that a doctor was sent for and attended to her. Plaintiff and her husband offer as excuse for this delay that they did not have the means to consult a physician which may be so, although it is shown that her husband was working with the relief forces. With the common knowledge that doctors generally answer all calls regardless of the means of the patient, we are inclined to believe that the explanation given in this case furnishes, after all, a very poor excuse if any at all. But we find, that even after he is consulted and examines the plaintiff, the doctor is not told anything about an accident or a fall and of the injuries which followed. The physician, Dr. R. R. Ward, says that Mrs. Creel complained of a pain in her back and that he accordingly strapped the region that was involved. He remembers also having prescribed medicine that is usually given in cases of hemorrhage. He says his impression is that her troubles related to her menstrual period. Although Mrs. Creel says that she told him of having had a miscarriage, he does not remember anything about it, and says that if she had, he would have attached more importance to that phase of the case. Dr. Ward testifies that he did not see any bruises on the plaintiff, and as it is shown that he did strap her back, it is somewhat hard to understand how he would not, in doing so, have seen those she complained of having sustained on that part of her body. The doctor, it might be mentioned, was plaintiff's own witness and it is quite evident that his testimony did not help her case very much.

Although plaintiff's husband testified that he had notified Mr. Dorsey of the accident before, the latter is most positive in his assertion that the first time he learned of it was when he was served with a copy of plaintiff's petition in the suit. Because of the many discrepancies and inconsistencies in the testimony of plaintiff's husband, the district judge accepted the version of the defendant on this point and we certainly cannot say that he erred in this respect any more than he did on any of the other points involved.

After judgment had been rendered in the lower court, plaintiff applied for a rehearing. In her application she set out in detail facts which tended to show that the ladies who testified on behalf of the defendant in the case had been influenced, if not bribed by the defendant with gifts of clothing and shoes and other wearing apparel. The petition in which these matters are alleged is sworn to by the plaintiff. The defendant filed an answer to that petition specifically denying the charges therein made. It appears that plaintiff thereafter attempted to withdraw her application which the district judge refused to let her do whereupon defendant insisted on submitting proof in support of his denial of the serious charges therein made. The court, in our opinion, properly permitted him to do so. The testimony is in the record and we have read it as we felt that it would greatly affect the credibility and the weight of the testimony of nearly all of the witnesses in the case. It shows that none of these ladies had ever received any such gifts as are mentioned in plaintiff's application from either the defendant or any one else. The only gifts shown to have been made by Mr. Dorsey consisted of toys and trinkets to the children of the neighborhood at Christmas time. He did give away clothes and shoes to some poor people after closing out his store, but none of the ladies who testified in this case shared in any of these gifts. Besides this, the testimony of the mayor of the city of Bogalusa, as well as that of two prominent citizens connected with some of the banks in the city, is to the effect that Mr. Dorsey is a charitable man and that he enjoys a good reputation for honesty and integrity. All of this fortifies us in the conclusion that the case has been correctly disposed of in the lower court and the judgment is therefore affirmed.